UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS D. ESORDI,

      Plaintiff,

v.                                          Case No. 21-10570

MACOMB TOWNSHIP, *et al.*,          Sean F. Cox
                                    United States District Court Judge

      Defendants.

_____/

**OPINION & ORDER
ON DEFENDANTS' SUMMARY JUDGMENT MOTIONS**

      This is a very contentious case.  The only claim in this federal case is Plaintiff Thomas

Esordi's § 1983 claim against Defendants, for allegedly depriving him of his constitutionally-

protected property interest in continued employment with Macomb Township without a

pre-termination hearing.  After the close of discovery, all three Defendants (Macomb Township,

its former Supervisor Janet Dunn, and its Clerk Kristi Pozzi) filed summary judgment motions

challenging Plaintiff's procedural due process claim against them.  The parties have briefed the

issues and the Court concludes that a hearing is not necessary.  *See* Rule 7.1(f) of the Local

Rules for the United States District Court for the Eastern District of Michigan.

      For the reasons set forth below, the Court shall grant the motions, to the extent that it: 1)

grants summary judgment in favor of all three Defendants because Plaintiff has not established

that he has a constitutionally-protected property interest in continued employment with the

Township; 2) rules that, additionally, Plaintiff's procedural due process claim against Defendants

Dunn and Pozzi fails because they did not participate in the challenged decision that forms the

1

basis of that claim; and 3) rules that, additionally, Defendant Pozzi is entitled to qualified immunity.

## BACKGROUND

On or about April 21, 2020, Plaintiff Thomas Esordi ("Plaintiff" or "Esordi") filed suit against the following Defendants in state court: 1) Macomb Township; 2) Janet Dunn, former Supervisor and Member of the Board of Trustees that governs the Township ("Dunn"); and 3) Kristi Pozzi, Clerk and a member of the Board of Trustees that governs the Township ("Pozzi").

During the state-court action, Plaintiff filed a First Amended Complaint, asserting several state-law claims. The action proceeded in state court.

On March 1, 2021, Plaintiff filed a Second Amended Complaint – that added one federal claim. On March 15, 2021, the action was then removed to federal court based upon federal-question jurisdiction over Count V of Plaintiff's Second Amended Complaint – "Denial of Due Process in Violation of 42 U.S.C.A. § 1983." This Court declined to exercise supplemental jurisdiction over Plaintiff's state-law claims, that had already been proceeding in state court for more than a year, and those claims were remanded back to Macomb County Circuit Court. Thus, Plaintiff's § 1983 due process claim (Count V) is the only claim in this federal action.

In Count V, Plaintiff alleges a claim under 42 U.S.C. § 1983 against Defendants, for allegedly depriving Plaintiff of his constitutionally-protected property interest in continued employment without a pre-termination hearing. More specifically, he alleges:

116.    This action is brought pursuant to 42 U.S.C. § 1983 against Defendants for depriving Plaintiff of his constitutionally protected property interest in continued employment absent a pre-termination hearing, under color of law, in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

2

117.   Plaintiff enjoyed a constitutionally protected property interest in continued employment.

118.   The Board of Trustees' acts represent official policy of Defendant Macomb Township and are attributable to Defendant Macomb Township.

119.   Acting under color of law, Defendants promulgated and carried out the official policies, orders, and directives described above intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of Plaintiff, including the fundamental right to due process of law and other applicable provisions of the United States Constitution.

140.[1]   Defendants' callous disregard of Plaintiff's rights rises to the level of deliberate indifference.

120.   By promulgating and carrying out the policies, orders, and directives described above, Defendants have unlawfully violated Plaintiff's constitutional rights.

121.   Acting under color of law and pursuant to their authority as Board of Trustee Members, Defendants terminated Plaintiff from his employment.

122.   Before depriving Plaintiff of his constitutionally protected property interest in continued employment, Defendants did not conduct a pre-termination hearing or otherwise afford Plaintiff notice of the grounds for his termination and a meaningful opportunity to respond.

123.   Defendants' actions in depriving Plaintiff of his constitutionally protected property interest in continued employment absent a pre-termination hearing or other notice of the grounds for his termination and an opportunity to respond abridges his right to due process of the law in violation of the Fourteenth Amendment to the United States Constitution.

124.   At all times material hereto, Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known.

125.   Defendants are not entitled to governmental or qualified immunity.

126.   As a direct and proximate result of Defendants' wrongdoing, Plaintiff has sustained loss of earnings and earning capacity, past and future lost

---

[1]As numbered in the Sec. Am. Compl.

3

earnings, the value of fringe and pension benefits, loss of job and career
opportunities, damage to his good name and reputation in the community,
mental and emotional distress, humiliation and embarrassment, loss of the
enjoyment of the ordinary pleasures of everyday life, and loss of the
ability to pursue employment of choice.

(Pl.'s Sec. Am. Compl. at 22-24).

Under the original Scheduling Order, discovery was to close by December 29, 2021, and
dispositive motions were due by January 31, 2022. (ECF No. 13). On December 14, 2021, those
dates were extended, with discovery to close on March 29, 2022, and dispositive motions due
May 2, 2022. (12/14/21 Text-Only Order).

In February and March of 2022, Defendants filed summary judgment motions. In the
midst of those filings, however, Plaintiff terminated his counsel and hired new counsel to
represent him in this case.

Defendants sought to disqualify one of the new attorneys that Plaintiff hired, but this
Court denied those motions. This Court gave Plaintiff a considerable break when it granted a
request by Plaintiffs' new counsel that discovery be reopened and denied the pending dispositive
motions without prejudice.

An Amended Scheduling Order was issued on May 31, 2022. (ECF No. 64). A flurry of
discovery motions ensued, but they have all been resolved.

On October 7, 2022, Plaintiff sought leave to file a Third Amended Complaint.
Plaintiff's proposed Third Amended Complaint included an entirely new count ("Conspiracy
Under 42 U.S.C. § 1985") and also purported to "re-asset" all of the state-law claims that this
Court had declined to exercise supplemental jurisdiction over, that had been remanded back to
state court. This Court denied this motion in an Opinion and Order issued on October 17, 2022.

4

On December 28, 2022, this Court reset the deadline for filing dispositive motions to January 3, 2023. Thereafter, summary judgment motions were filed by: 1) Defendant Pozzi (ECF No. 111); 2) Macomb Township (ECF No. 118); and 3) Defendant Dunn (ECF No. 121).

This Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 2-3).

Defendant Pozzi's motion includes a "Statement of Material Facts Not In Dispute" ("Def. P's Stmt.") and Plaintiff filed a "Counter-Statement of Disputed Facts" (Pl.'s P Stmt."). Defendant Dunn's motion includes a "Statement of Material Facts Not In Dispute" ("Def. D's Stmt.") and Plaintiff filed a "Counter-Statement of Disputed Facts" (Pl.'s D Stmt."). The Township's motion includes a "Statement of Material Facts Not In Dispute" ("Def. Twp.'s Stmt.") and Plaintiff filed a "Counter-Statement of Disputed Facts" (Pl.'s Twp. Stmt.").

The relevant evidence submitted by the parties, viewed in the light most favorable to Plaintiff, is as follows.

5

In January of 2017, Macomb Township hired Plaintiff to serve in the newly created Township position of Human Resources Director / General Counsel, pursuant to a written employment agreement ("the Employment Agreement."). (Twp. Stmts. at ¶ 1).

The Employment Agreement is found at ECF No. 17-1. It does not contain a specified term or duration of the employment. (*Id.*). It contains the following provisions:

> 5.   Annual Review.
> Employee's performance and compensation will be reviewed by the Board or an appointed committee of the Board on an annual basis.
>
> 6.   Just Cause.
> The township and Employee agree that all disciplinary action or discharge shall be for just cause and that disciplinary action shall be progressive except where Employee's misconduct warrants immediate discharge.

(*Id.* at 4-5).

Plaintiff was the interim Macomb Township attorney immediately before and until his employment contract was approved by the Macomb Township Board of Trustees on January 11, 2017 for the Human Resource Director/General Counsel Position. (Pozzi Affidavit, ECF No. 17-2, at ¶ 4). Plaintiff drafted the Employment Agreement and Supervisor Dunn presented it to the Macomb Township Board of Trustees. (Pozzi Affidavit at ¶ 5).

In 2017, when Plaintiff was hired and the Employment Agreement was approved by the Township Board, the Township Board consisted of Dunn as Supervisor, Pozzi as Clerk, Karen Goodhue as Treasurer, Dino F. Bucci, Jr. as Trustee, and Timothy F. Bussineau, as Trustee. (Twp. Stmts. at ¶ 5).

After 2017, the composition of the Township Board changed. Dino F. Bucci resigned as a Trustee on or about November 13, 2018, due to legal problems, and Kathy Smith was appointed to replace him. Roger Krzemski passed away on December of 2019, and he was replaced by

6

Charlie Oliver.  (Twp. Stmts. at ¶ 6).

On February 19, 2020, the Township Board voted to terminate Plaintiff's employment with the Township, and a *Loudermill* hearing was conducted on April 29, 2020, to determine if there was "just cause" to terminate Plaintiff under the Employment Agreement.  (Twp. Stmts. at ¶ 7).  At that hearing, the Township Board's vote resulted in a deadlock, with only three out of six members voting that there was just cause to terminate Plaintiff.  (Twp. Stmts. at ¶ 8).  Due to the deadlock at the *Loudermill* hearing, Plaintiff returned to work on May 11, 2020.  (Twp. Stmts. at ¶ 9).

On April 21, 2020, while he was still employed by Macomb Township, Plaintiff filed suit against Macomb Township, Dunn, and Pozzi in state court ("the State Court Case").

A new Township Board was elected on November 3, 2020, and took office on November 20, 2020, which was comprised of Frank J. Viviano as Supervisor, Pozzi as the Clerk, Leon Drolet as the Treasurer, Frank A. Cusamano, Jr. as Trustee, Nancy J. Nevers as Trustee, Peter J. Lucido, III as Trustee and Charlie Oliver as Trustee.  (Twp. Stmts. at ¶ 10).

On November 24, 2020, the new board dissolved the dual Human Resources Director / Legal Counsel position, authorized a request to recruit a Human Resources Director, and authorized an RFP for Legal Counsel.  (ECF No. 129-17, 11/24/20 Meeting Minutes). The meeting minutes reflect that "Clerk Pozzi recused herself from all discussion and votes regarding" the "Resolution to Dissolve Human Resources Director-Legal Counsel Position Item presented by Supervisor Viviano" "due to ongoing litigation."  (ECF No. 111-3 at PageID.2261). As to this resolution, Oliver, Lucido, Cusumano, Drolet, and Viviano voted in favor of it, Nevers voted against it, and Pozzi recused herself.  Thus, the resolution was adopted and the dual

position was dissolved.  Pozzi also recused herself from discussion and voting on related resolutions to recruit for a Human Resources Director and to authorize an RFP for Legal Counsel, that were passed unanimously by Oliver, Cusumano, Lucido, Nevers, Drolet, and Viviano.  (*Id*.).

On November 25, 2020, Plaintiff was advised that the Township Board voted to eliminate the dual position of Human Resources Director / General Counsel and that his services were no longer needed.  (Twp. Stmts. at ¶ 12; ECF No. 129-12).

During discovery in this case, the individuals who voted in favor of dissolving the dual position discussed their reasons for voting as they did.  None of them discussed the issue with Pozzi or expressed that Pozzi influenced their decision.  (*See, e.g.,* Viviano Dep. at 55; Oliver Dep. at 130; Lucido Dep. at 16-17; Cusumano Dep. at 95-96; Drolet Dep. at 68-69).

After Macomb Township eliminated the dual Human Resources Director / General Counsel position, the Township advertised for the Human Resources Director position.  (Twp. Stmts. at ¶ 14; Pl.'s Dep., ECF No. 17-6, at 561).  The Township also issued a separate RFP for independently contracted Macomb Township legal counsel.  (Twp. Stmts. at ¶ 15).  Plaintiff did not apply for either of those positions.  (Twp. Stmts. at ¶ 16; Pl.'s Dep. at 561-63).  Plaintiff testified that he saw no point in doing so.  (*Id*.).

On March 1, 2021, Plaintiff filed a Second Amended Complaint in the State Court Case that asserted state-law claims – including a breach of contract claim based on the Employment Agreement.  Plaintiff also asserted, for the first time, a federal procedural due process claim. After Defendants removed the matter to this Court, this Court kept the sole federal claim and remanded the state-law claims back to state court.

8

On December 13, 2021, the Macomb County Circuit Court granted partial summary disposition in favor of the Township and dismissed Count II (Violation of Michigan Public Policy), Count III (Breach of Contract) and Count IV (Retaliation in Violation of Michigan's Whistleblower's Protection Act/Public Policy) of Plaintiff's Second Amended Complaint. (Twp. Stmts. at ¶ 20). The state court's opinion and order is found at ECF No. 17-9. As to Plaintiff's breach of contract claim, the state court ruled that, in accordance with *Hazel Park v. Potter*, 169 Mich. App. 714, 426 N.W.2d 789 (1988), the Employment Agreement "is void as it is against public policy since after its approval, it impaired subsequent board members' ability to remove Plaintiff from his dual-role and appoint a successor." (*Id*. at 10). The state court's analysis on the issue is set forth on pages six through ten of its decision. (ECF No. 17-9 at 6-10).

Plaintiff's motion to set aside the state court's December 13, 2021 Opinion and Order was denied by the state court on December 8, 2022. (ECF No. 118-1). In that Opinion and Order, the state court trial judge noted that it does not resolve the last pending claim nor close the case, as some claims remain pending. On or about December 29, 2022, Plaintiff filed an application for leave to appeal the Circuit Court's decision with the Michigan Court of Appeals. (ECF No. 129-21).

## STANDARDS OF REVIEW

Defendants Pozzi and Dunn bring their motions under Fed. R. Civ. P. 56(c). Macomb Township brings its motion under Fed. R. Civ. P. 56(c) and 12(c).

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). This Court must view the evidence in the record, and reasonable inferences that can be drawn from those facts, in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When reviewing a summary judgment motion, this Court does not weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Pursuant to Federal Rule of Civil Procedure 12(c), after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Barber v. Charter Twp. of Springfield, Mich.*, 31 F.4th 382, 386 (6th Cir. 2022) (quoting Fed. R. Civ. P. 12(c)). In the Sixth Circuit, courts analyze Rule 12(c) motions "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Id.*

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* When assessing the sufficiency of a plaintiff's claim, this Court must accept the complaint's factual allegations as true. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 664, 129 S.Ct. 1937.

## ANALYSIS

The only claim in this federal case is Plaintiff's § 1983 denial of procedural due process

claim.  Defendants seek summary judgment in their favor, raising several challenges.

I.      **Plaintiff's Procedural Due Process Claim, Against All Three Defendants, Fails.**

The Due Process Clause of the Fourteenth Amendment forbids a State from depriving

persons of 'life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV §

1, cl. 3.  To prove a § 1983 procedural due process claim, the plaintiff must establish the

following three elements: 1) that he has a life, liberty, or property interest protected by the Due

Process Clause; 2) that he was deprived of that protected interest; and 3) that the state did not

afford him adequate procedural rights prior to depriving him of his protected interest.  *Hahn v.*

*Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

In practice, procedural due process claims are addressed in two steps.  *Kaplan v.*

*University of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). First, the Court determines "whether

a constitutionally protected property interest is at stake."  *Id.*  Only if the Court finds that it is,

does the Court proceed to the second step of considering "the procedures necessary to protect

that interest." *Id.*

As explained in *Hasanaj v. Detroit Public Sch. Commty. Dist.*, 35 F.4th 437, 447 (6th

2022):

> "Although the underlying substantive interest is created by 'an independent
> source such as state law,' federal constitutional law determines whether that
> interest rises to the level of a 'legitimate claim of entitlement' protected by the
> Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757, 125
> S.Ct. 2796, 162 L.Ed.2d 658 (2005) (citation omitted). To that end, "a property
> interest in a benefit" requires that a person have "more than a unilateral
> expectation of it. He must, instead, have a legitimate claim of entitlement to it."
> *Id*. at 756, 125 S.Ct. 2796 (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701 (1972)).

*Id*. at 447.

Defendants correctly note that Plaintiff has no federal right to continued employment

11

with the Township.  That is because the United States Constitution does not create or define property interests.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Rather, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law. " *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances."  *Singfield v. Akron Metro. Hous. Auth*., 389 F.3d 555, 565 (6th Cir 2004).  Thus, the Court must look to these sources to determine whether Plaintiff has a constitutionally-protected property interest in continued employment with the Township.

In *Loudermill*, for example, the plaintiff employees were classified as civil service employees under an Ohio statute that provided that they could only be terminated for cause. *Loudermill*, 470 U.S. at 535.  Thus, the "independent source" that created the property right to continued employment in that case was the Ohio statute.   Based on that state statute, the employees in that case possessed property rights in continued employment such that they were entitled to a pre-termination hearing.  *Id*. at 538-42.

## A.    Failure To State A Procedural Due Process Claim Based Upon State/Local Statutes Or Implied Contract

Here, Plaintiff's Second Amended Complaint alleges that Plaintiff has a "constitutionally protected property interest in continued employment" with the Township.  (Pl.'s Sec. Am. Compl. at ¶ 117).  The Township contends that is an unsubstantiated and incorrect legal conclusion and, as such, Plaintiff fails to state a viable procedural due process claim under Fed. R. Civ. P. 12(c).

The Township is correct in that Plaintiff's pleading does not identify the alleged independent source of his constitutionally-protected property interest in continued employment

with the Township.

Notably, Plaintiff's Second Amended Complaint does not identify any state or local statute that is the independent source of his alleged property interest in continued employment; nor does it allege that a contract implied from the circumstances exists such as to support a procedural due process claim. Thus, Plaintiff's Second Amended Complaint fails to state a procedural due process claim based upon such sources. *See, eg., Latimer v. Robinson*, 2005 WL 1513103 (6th Cir. 2005) (Affirming district court's dismissal of procedural due process claim where complaint lacked sufficient facts to allege a constitutionally protected property interest); *Demumbreum v. Metropolitan Dev. & Housing Agency*, 2006 WL at * 1 (M.D. Tenn. 2006) (Plaintiff failed to allege a constitutionally protected property interest in continued employment); *Taylor Acquisitions, LLC v. City of Taylor*, 2006 WL 3085384 at *4-5 (E.D. Mich. 2006) (Dismissing procedural due process claim where the plaintiff failed to allege a protected property interest.)

But given the benefit of inferences from all of the factual allegations included in it, the Second Amended Complaint does allege a procedural due process claim that is based upon the Employment Agreement.

## B.   Requests For Summary Judgment Based Upon Lack Of Protected Property Interest In Employment

In seeking summary judgment in their favor, Defendants contend that there is no independent source that provides Plaintiff with a constitutionally-protected property interest in his former position as Human Resources Direct / General Counsel. The Court agrees.

### 1.   Local Or State Statutes As Source Of Property Interest

Again, Plaintiff's Second Amended Complaint, the operative pleading (and the pleadings

13

are now closed) does not allege that Plaintiff has a constitutionally-protected property interest in continued employment with the Township by virtue of any state or local statute. That is, his pleading does not identify any state of local statute as the independent source that created his alleged property interest.

Nevertheless, in responding to the summary judgment motions, Plaintiff directs the Court to some state statutes. In doing so, however, Plaintiff does not argue that any of these state statutes constitute an independent source that created a constitutionally-protected property interest in his continued employment, as was the situation presented in *Loudermill.* Rather, in citing these statutes, Plaintiff argues that they provide support for the notion that the Township is permitted to hire attorneys. (*See, eg.*, ECF No. 129-1 at PageID.2917). That is beside the point. Plaintiff has not identified any state or local statutes that could serve as an independent source that created a constitutionally-protected interest in continued employment with the Township.

Moreover, the Township has directed the Court to several state statutes, including Mich. Comp. Laws § 42.9 and § 41.75a, noting that they give a township board the authority to appoint *and remove township employees as necessary.* Mich. Comp. Laws § 41.75a provides that a "township board may employee a township manager and other employees as are necessary" and provides that such employees "shall serve at the pleasure of the township board." Mich. Comp. Laws § 41.75a  (emphasis added).; *see also Armstrong v. Ypsilanti Charter Twp.*, 248 Mich. App. 573, 589-90 (2001) (Concluding that Mich. Comp. Laws § 42.9 allows a township board to abolish a position and any other reading of that statute is absurd").

### 2.     The Employment Agreement As The Source Of Property Interest

As noted above, Plaintiff's Second Amended Complaint alleges a procedural due process

claim based upon an alleged protected property interest created by the Employment Agreement.

That very Employment Agreement, however, has been declared to be void as against public policy under controlling Michigan law by the Macomb County Circuit Court. (*See* State Court's 12/13/21 Opinion and Order at 10) (Ruling that the "employment contract is void as it is against public policy since after its approval, it impaired subsequent board members' ability to remove Plaintiff from his dual-role and appoint a successor."). The state court's analysis on the issue is as follows:

> Defendant Macomb argues that the employment contract approved by the previous board is void as a matter of law since its contrary to public policy because it deprives the new board from appointing and removing employees. Specifically, Defendant Macomb argues that contrary to *Hazel Park v Potter*, 169 Mich App 714, 426 NW2d 789 (1988) the employment contract unlawfully prevents the new board from selecting its own general legal counsel or director of human resources since Plaintiff's dual-role is without an employment term and requires a showing of just cause before Plaintiff may be terminated. (See Def. Ex. 1, Para 6, 2, Para 6-8, 3, Para 123-129, 4 and 5). In response, Plaintiff argues that *Potter* is distinguishable since unlike the instant case the favorable employment contract granted to the city manager was given during a "lame duck" session of an out-going board and Hazel Park's city charter called for the city manager to serve at the pleasure of the city council. Plaintiff contends that even if the "just cause" provision in the employment contract is void against public policy, pursuant to *Samuel D. Beola Services, Inc. v Wild Bros*, 210 Mich App 636, 641; 534 NW2d 217 (1995) that provision is severable from the employment contract. Plaintiff maintains that Defendant Macomb's argument is contradicted by its contracts with its past and current HR Director(s), Fire Chief and Deputy Fire Chief which are being enforced and include an indefinite term and are not "at will." (See Def. Ex. 3, 4, 8, and 10). Plaintiff avers that questions of fact exist to prevent dismissal of his Count III claim based upon (1) his successful working relationship with Defendant Macomb; (2) he left a successful private practice to take the position with Defendant Macomb; (3) Defendant Macomb's board approved the contract; (4) he successfully performed in the dual-role for several years after the employment contract was approved; (5) his employment was terminated without cause and (6) Plaintiff was terminated because he reported violations of the law.

> In *Potter,* plaintiff municipality filed a lawsuit seeking a declaratory judgment as to the validity of the employment contract entered between defendant

city manager and a majority of the outgoing city council during a "lame duck" session before the end of the year. *Potter*, 169 Mich App at 715-718. Defendant's employment contract provided that if plaintiff terminates defendant's employment without just cause prior to December 31, 1986, defendant is entitled to a lump sum for severance pay. *Id.* On January 1, 1986, the new city council took office and on January 13, 1986 voted to terminate defendant's employment contract on the basis that defendant committed malfeasance in entering into the employment contract with the outgoing board since the just cause provision in the employment conflict conflicts with the city charter which calls for city managers to hold office at the pleasure of the city council. *Potter,* 169 Mich App at 718-719.

Plaintiff moved for summary disposition and the trial court granted the motion on the basis that defendant failed to state a valid defense to plaintiff's claim that the contract improperly infringed upon the incoming council's right to appoint a city manager pursuant to the city charter. On appeal, the *Potter* Court upheld the trial court's ruling and determined that the employment contract between defendant and the outgoing city council was void since it deprived the incoming council of its power to select and appoint a city manager as provided in the city charter. The *Potter* Court also determined that the employment contract was void on the basis that it takes away the governmental or legislative power of the incoming counsel to appoint and remove public officers. 169 Mich App. at 722-723. In so ruling, the *Potter* Court adopted the majority view in that case of first impression:

> [A] municipal council cannot engage a public officer by contract for a term extending beyond that of its own members, so as to impair the right of their successors to remove such officer to appoint another in his place. *Potter*, 169 Mich App. at 720.

Although Plaintiff maintains that *Potter* is distinguishable since the outgoing city council in that case approved of the contract only after being defeated (or retired) during a "lame duck" session, this distinction is not detrimental to the application of *Potter* to this case. The material facts in *Potter* are that the outgoing city council approved the contract that engaged the city manager for a period that extended beyond its term. While Plaintiff maintains that the instant case is distinguishable from *Potter* on the additional basis that there is no conflict between the employment agreement and a city charter, nevertheless, the *Potter* Court determined that the employment contract was void on the additional basis of public policy since the contract took away from the governmental or legislative power of the incoming counsel to appoint and remove public officers. *Potter,* 169 Mich App at 720. *Potter* applies in this case.

Turning to the evidence presented – it is undisputed the Plaintiff's employment contract was approved by Defendant Macomb's board on or about

16

January 11, 2017.  (Def. Ex. A).  The employment contract provided for Plaintiff to serve for an undefined term and that he may be removed as General Legal Counsel/Director of Human Resources only upon a showing of just cause.  (Def. Ex. A).  Later, two new members of the board, Kathy Smith and Charlie Oliver, were added after the employment contract was approved.  See fn 1 and 2 (Def. Ex. 2, Para 6-8).  Subsequently, on November 3, 2020, four new members of the board were elected: Frank J. Viviano as Supervisor, Leon Drolet as Treasurer, Frank A. Cusamano, Jr. and Peter J. Lucido, II as Trustees.  (Def. Ex. 2, Para 9).  There can be no reasonable dispute that the composition of Defendant Macomb's board changed after the employment contract was approved and therefore the employment contract, without a limiting term, extended beyond the term of Defendant Macomb's board.

For his part, Plaintiff presents the employment contacts of [others] to establish Defendant Macomb's position in this case is inconsistent with the terms set forth in the employment contracts of other municipal employees. The Court determines that Plaintiff's exhibited evidence is immaterial to this case and does not establish a genuine issue of material fact that the employment contract at issue in this case did not impair new members of Defendant's board from removing Plaintiff or appointing someone in his place.

Plaintiff also argues that significant issues of fact exist to prevent summary disposition of Count III including the fact that Defendant Macomb's board approved the employment contract.  As reasoned above, the approval of the employment contract by Defendant Macomb's board does not establish a question of fact.  Further, as for the remaining facts recited by Plaintiff including his successful working relationship with Defendant Macomb, his leaving private practice, his successful performance in the dual-role, his alleged termination without cause and the alleged retaliation, these facts do not establish a question of fact as to whether the employment contract was unlawful based upon the deprivation of governmental or legislative power by the new boards. Furthermore, Plaintiff has failed to cite any documentary evidence to support these fact[s].  (Plf. Brief, P. 10-11).

Although Plaintiff cites *Samuel D. Beola Services, Inc.*, 210 Mich App 641, for the proposition that the just cause provision in the employment contract is severable, this case is distinguishable as it does not involve the WPA.  Even if the Court were to adopt *Samuel D. Beola Services'* holding that for purposes of severing the disputed just cause provision, as reasoned above under *Potter*, the employment contract would still detract from the new board member's legislative power to appoint and remove public officers since the employment contract recites no term of Plaintiff's employment and therefore Plaintiff's employment term would exceed the new board's term.

> Therefore, Defendant Macomb's motion to dismiss Plaintiff's Count III breach of contract claim is granted, in accordance with *Potter*, on the grounds that the employment contract is void as it is against public policy since after its approval, it impaired subsequent board members' ability to remove Plaintiff from his dual-role and appoint a successor.

(ECF No. 17-9 at 6-10).

It is well established under Michigan law that a "void contract is no contract at all." *Thomas v. Morton Salt Co.*, 253 Mich. 613, 619 (1931). Contracts which are null and void are incapable of creating a property interest in continued employment for purposes of a procedural due process claim. *See, e.g., Shlay v. Montgomery*, 802 F.2d 918, 922 (7th Cir. 1986).

Plaintiff does not dispute these governing principles. Rather, Plaintiff asserts that the state court's decision is erroneous and that this Court is not required to follow it.

This Court, however, finds the state court's well-reasoned decision persuasive and shall follow it. Plaintiff, therefore, cannot establish that he has a constitutionally-protected property interest in continued employment based on the Employment Agreement.

### 3. Implied Right To Continued Employment

Even if Plaintiff had alleged that he had a procedural due process claim based upon a contract implied under the circumstances (which he did not allege), that claim would also fail.

The Township's motion anticipated that Plaintiff "may attempt to argue that there exists an 'implied' right to continued employment based on certain cases such as *Perry v Sinderman*, 408 U.S. 593, 92 S.Ct. 2694 (1972)" and persuasively explains why such reliance is misplaced:

> While acknowledging that it might be possible for a property interest to be created under the right set of facts or circumstances, the *Sinderman* Court was also careful to point out that such a claim would still be defeated in the face of a state law to the contrary:
>
> > We do not now hold that the respondent has any such legitimate

18

> claim of entitlement to job tenure. For "property interests . . . are
> not created by the Constitution. Rather, they are created…from an
> independent source such as state law . . . ." *Board of Regents* v.
> *Roth, supra*, at 577. If it is the law of Texas that a teacher in the
> respondent's position has no contractual or other claim to job
> tenure, the respondent's claim would be defeated.

*Sinderman* at 602, fn. 7. Here, as set forth above, Michigan law at MCL § 41.75a
defeats Plaintiff's claim to a property interest in continued public employment.
Plaintiff has no such interest.

(Twp.'s Br. at 19).

Accordingly, for all of these reasons, the Court finds that Plaintiff's procedural due

process claim against all three Defendants fails due to Plaintiff's lack of a constitutionally-

protected property interest in his continued employment with the Township.

## II. Plaintiff's Procedural Due Process Claim Against Defendants Dunn And Pozzi Also Fails Because They Did Not Participate In The Challenged Decision.

In addition to the above challenge, Defendants Dunn and Pozzi persuasively argue that

they are entitled to summary judgment in their favor because they did not participate in the

challenged decision that forms the basis of Plaintiff's procedural due process claim.

### A. Defendant Dunn

Defendant Dunn asserts that she is entitled to summary judgment in her favor because, at

the time the Township Board voted to dissolve the dual position, she was no longer on the

Board.  That is, she was not on the Board of Trustees that made the decision that forms the basis

of Plaintiff's procedural due process claim.

In response, Plaintiff asserts that whether or not Dunn "actually cast a vote (or was even

on the Board) at the time this job action was taken is not determinative of her individual

liability" and cites *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010) for that

proposition.  (Pl.'s Resp. at 1).  Plaintiff also directs the Court to *Davis v. Robert*, 192 F. Supp.3d

847 (E.D. Mich. 2016).  (Pl.'s Br. at 12).

Rather than explain how he can pursue his procedural due process claim against Dunn

when she was not even on the Board when it made the challenged decision, Plaintiff makes

references to conspiracy and retaliation allegations – claims that are not in this case:

> The record clearly demonstrates previous actions taken by Dunn to persuade the
> Board to terminate Mr. Esordi and are sufficiently serious on their own to qualify
> as an *adverse action* as it applies to 42 USC § 1983.  See *Fritz*. Davis Id [sic] 45.
> In this case, there is testimony that Defendant Dunn *participated in a conspiracy*
> to achieve Plaintiff Escordi's termination from Macomb Township as *retaliation*
> for his Federal cooperation and in return for protection against potential ethics
> action which she admittedly feared.

(Pl.'s Br. at 12) (emphasis added).

Notably, the claim in *Fritz* was a First Amendment retaliation claim – not a procedural

due process claim.  To establish a retaliation claim, a plaintiff must establish: 1) he engaged in

constitutionally protected conduct; 2) an adverse action was taken against the plaintiff that would

deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse

action was motivated at least in part by the plaintiff's protected conduct.  *Fritz,* 592 F.3d at 723.

Plaintiff's reliance on *Fritz* is entirely misplaced.  Plaintiff does not have a retaliation claim in

this case and, therefore, Plaintiff's assertions about "adverse actions" go nowhere.

The same is true of *Davis v. Robert*, 192 F.Supp.3d 847 (E.D. Mich. 2016).  It addressed

a First Amendment retaliation claim – not a procedural due process claim.

Neither of these cases support the notion that Plaintiff can bring his procedural due

process claim against Defendant Dunn when she was not on the Board of Trustees when it made

the decision that forms the basis of Plaintiff's claim.

20

Defendant Dunn is entitled to summary judgment on this additional basis.

**B.      Defendant Pozzi**

Unlike Dunn, Pozzi was a member of the Macomb Township Board at the time of the
challenged decision – the November 24, 2020 vote to dissolve the dual Human Resources
Director / Legal Counsel position.  Notably, however, Pozzi recused herself from the discussion
of the resolution and the vote on it.

Pozzi asserts that she is entitled to Plaintiff's procedural due process claim because there
"simply is no basis for holding an individual defendant liable under § 1983 for employment
decisions in which they did not participate."  (Def. Dunn's Br. at 10).  Her brief further asserts:

> In response to this Motion when originally filed, Plaintiff argued that additional
> discovery was needed on this issue because it may show that the vote to eliminate
> the position was the result of some pre-vote collusion by Board members,
> including Ms. Pozzi.  However, the discovery that was conducted on this issue
> was thorough and is now complete. It failed entirely to support such a theory. Not
> only did each Board member who voted in favor of elimination disabuse any
> notion of input, influence, or involvement by Ms. Pozzi, but each articulated
> either pre-existing beliefs regarding the problems with the dual role (Viviano,
> Oliver, Cusumano, Lucido) and/or motivation to support the Supervisor in his
> determination that the move was best to improve the functioning of the Township
> (Drolet). Given this evidence, there is zero basis upon which a reasonable jury
> could conclude that Ms. Pozzi had any direct or indirect participation in the
> allegedly unconstitutional employment action.  Accordingly, there is no basis for
> the imposition of individual liability upon her and
> summary judgment is warranted.

(*Id.* at 10-11).

In response to Defendant Pozzi's motion, Plaintiff takes the position that whether or not
Defendant Pozzi actually "actually cast a vote" on the challenged decision by the Township
Board "is not determinative of her individual liability" and again relies on *Fritz.*  (Pl.'s Resp. Br.
at 1).  As explained above, Plaintiff's reliance on *Fritz* is entirely misplaced.

Plaintiff also makes assertions about Pozzi's actions in connection with other, previous votes by the Township Board.  (*See* Pl.'s Br. at 13).  Plaintiff's procedural due process claim, however, is based upon the Board's November 24, 2020 vote to dissolve the dual position – not prior votes or actions.

Plaintiff also relies on *Dunleavy v. Wayne Cnty. Comm'n*, 2006 WL 891450 (E.D. Mich. 2006).  Again, however, that case did not involve a procedural due process claim.  Like *Fritz* and *Davis,* it involved a First Amendment retaliation claim.

None of the cases cited by Plaintiff support the notion that Plaintiff can maintain a procedural due process claim against Defendant Pozzi when she recused herself from both the Township Board's discussion of, and vote on, the resolution to dissolve Plaintiff's position.

Defendant Pozzi is entitled to summary judgment on this additional basis.

### III.    Defendant Pozzi Is Also Entitled To Qualified Immunity.

Defendant Pozzi's motion includes additional or alternative grounds for the dismissal of Plaintiff's procedural due process claim against her, claiming that she is entitled to both qualified immunity and absolute legislative immunity.

#### A.    Qualified Immunity

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law.  *Dominguez v. Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir. 2009).

Under the familiar doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.; Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation. *Dominguez*, 555 F.3d at 549.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994). Here, Defendant Pozzi has raised the issue in the context of a summary judgment motion.

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

For purposes of qualified immunity, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original); *Terrance v. Northville Reg. Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (The Sixth Circuit "has consistently held that damage claims against governmental officials alleged to arise from violation of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege

23

facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right.") (emphasis in original).

The first step in the qualified immunity analysis is to consider whether, viewing the allegations in the light most favorable to Plaintiff, could Plaintiff establish a Constitutional violation with respect to Defendant Pozzi. Then, the Court considers if that right was "clearly established."

As set forth above, viewing the facts in the light most favorable to Plaintiff, he cannot establish a constitutional violation by Defendant Pozzi.

Moreover, even if he could do so, Plaintiff has not met his burden with respect to the clearly established prong. To show that Defendant Pozzi's actions violated clearly established law, Plaintiff "must make one of two showings." *Colson v. City of Alcoa, Tennessee*, 37 F.4th 1182, 1189 (6th Cir. 2022). "One is that this is an 'obvious case'" where general standards can clearly establish the violation, even without a body of relevant case law. *Id*. Plaintiff does not argue that this is such a case and it is not such a case.

"That leaves the second method for showing that" Clerk Pozzi violated clearly established law: identify a case that put Pozzi on notice that her specific conduct at issue in this case was unlawful. *Id*. To do so, Plaintiff "must define the right with particularity 'in light of the specific context of the case, not as a broad general proposition,' *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (citation omitted), and then identify 'existing precedent' that "placed the ... constitutional question beyond debate, *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)." *Colson, supra*. "This demanding standard requires" Plaintiff "to identify a 'case that addresses facts like the ones at

issue here.'" *Id*.

Plaintiff has failed to do so. That is, Plaintiff has not identified any case wherein a township official has been found to violate an employee's procedural due process rights when that township official did not vote on the challenged decision that forms the basis of the procedural due process claim.

Accordingly, the Court rules that Defendant Pozzi is entitled to qualified immunity.

**B.    Absolute Legislative Immunity**

Defendant Pozzi also asserts that she is entitled to absolute legislative immunity as to Plaintiff's procedural due process claim. The Court finds, however, that argument does not fit the actual facts presented here – where Pozzi recused herself and did not vote on the resolution at issue.[2] Thus, Pozzi did not engage in a legislative function as to the vote in question. Her motion implicitly recognizes this, as it asserts that "even if Defendant Pozzi had participated in the vote, summary judgment would still be warranted on the grounds of legislative immunity." (Def. Pozzi's Br. at 14).

**CONCLUSION & ORDER**

For the reasons set forth above, IT IS ORDERED that Defendants' summary judgment motions are GRANTED to the extent that the Court RULES that: 1) all three Defendants are entitled to summary judgment in their favor because Plaintiff has not established that he has a

---

[2]Plaintiff has not asserted his procedural due process claim against the individuals who actually voted on the resolution at issue. If he had, *those individuals* would be entitled to absolute legislative immunity for voting on that resolution, because the resolution had prospective implications beyond Plaintiff. *See Collins v. Village of New Vienna*, 75 F. App'x 486 (6th Cir. 2003).

constitutionally-protected property interest in continued employment with the Township; 2)

additionally, Plaintiff's procedural due process claim against Defendants Dunn and Pozzi fails

because they did not participate in the challenged decision that forms the basis of that claim; and

3) additionally, Defendant Pozzi is entitled to qualified immunity.

      IT IS SO ORDERED.

                                  s/Sean F. Cox
                                  Sean F. Cox
                                  United States District Judge

Dated:  March 22, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on
March 22, 2023, by electronic and/or ordinary mail.

                                  s/Jennifer McCoy
                                  Case Manager